Amy K. Welch
The Law Offices of William R. Satterberg, Jr.
709 4th Avenue
Fairbanks, Alaska 99701
(907) 452-4454 (phone)
(907) 452-3988 (fax)
office@satterberg.net
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| POLAR ENVIRONMENTAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RUST-OLEUM CORPORATION, <br><br> Defendant. | <br><br><br><br><br><br><br><br> Case No. \_4:20-cv-00017-HRH_____ |

## COMPLAINT

COMES NOW Plaintiff, POLAR ENVIRONMENTAL TECHNOLOGIES, INC., by and through its attorney of record, the Law Offices of William R. Satterberg, Jr., and hereby complains against Defendant, RUST-OLEUM CORPORATION as follows:

**Parties, Jurisdiction, and Venue**

1. Plaintiff Polar Environmental Technologies, Inc. ("Polar") is an Alaska corporation in good standing with its principal place of business in Fairbanks, Alaska.

2. Defendant Rust-Oleum Corporation ("Rust-Oleum") is a Delaware corporation with its principal place of business in Illinois.

3. Rust-Oleum purposefully availed itself of the benefits of conducting business in Alaska.

4. The events giving rise to this complaint occurred primarily in or around Fairbanks, Alaska, in the Fourth Judicial District.

5. This is a dispute for an amount of damages in excess of $100,000.00.

6. Pursuant to the Exclusive Sales and License Agreement between the Parties, venue is proper in the United States District Court for the District of Alaska.

## Factual Allegations

7. On or about February 1, 2016, the Parties entered into an Exclusive Sales and License Agreement ("Agreement"), attached as *Appendix 1*.

8. Pursuant to the Agreement, Polar agreed that it would not sell or otherwise distribute its flexible treading products to any persons or entities, other than Rust-Oleum, for sale in the consumer retail and industrial distribution channels, excluding Alaska.

9. In consideration of the exclusive right to purchase, Rust-Oleum agreed to purchase from Polar not less than $500,000 of product each year during the term of the Agreement.

10. Polar retained the right to convert the Agreement into a non-exclusive sales agreement in the event that Rust-Oleum failed to purchase $500,000 of product during any year under the Agreement.

11. Rust-Oleum agreed to pay Polar three percent on its net sales of the products, to be paid quarterly within thirty days after the end of each calendar month during the term of the Agreement.

12. Polar reserved the right, upon termination of the Agreement, to procure from Rust-Oleum information on all sales of products during the twelve months preceding termination of the Agreement. Sales information included, but was not limited to, customer contact information, sales pricing, and sales volume.

13. Rust-Oleum agreed, upon termination of the Agreement, to contact and refer to Polar all customers having purchased products in the twelve months preceding termination of the Agreement.

14. During the first year of the Agreement, February 1, 2016 through January 31, 2017, Rust-Oleum purchased approximately $562,000 of product, thereby meeting the threshold amount pursuant to the Agreement.

15. By the end of the second year of the Agreement, February 1, 2017 through January 31, 2018, Rust-Oleum failed to purchase the minimum $500,000 of product. Rust-Oleum purchased only approximately $268,869 of product from Polar that year.

16. Throughout the second and third years of the Agreement, Rust-Oleum made representations that it was entering into an agreement with The Home Depot to sell the products, which required Polar to expend significant resources to accommodate the anticipated higher volume of production.

17. Rust-Oleum failed to provide the accountings of the quarterly royalty earnings and failed to make the required quarterly payments.

18. Polar expended significant sums to accommodate Rust-Oleum's demands for production in reliance upon the volume anticipated by the Agreement and upon Rust-Oleum's representations regarding a future contract with The Home Depot.

19. On or about August 23, 2018, Polar terminated the exclusivity Agreement.

20. Rust-Oleum failed to provide Polar with its customer and sales information upon termination pursuant to the Agreement.

21. Rust-Oleum failed to refer clients to Polar upon termination of the Agreement.

22. On or about March 28, 2019, Rust-Oleum began to comply with the termination provisions requiring referrals of customers and disclosure of sales and customer information.

23. For approximately seven months, Rust-Oleum failed to provide Polar with the required sales and customer information, nor did it refer customers back to Polar.

24. Rust-Oleum's failure to refer customers to Polar and to supply customers with orders after termination of the Agreement caused damages to Polar's business and reputation.

**Count I: Breach of Contract**

25. Plaintiff hereby incorporates Paragraphs 1-24 and further alleges as follows:

26. The Parties entered into a binding contractual agreement.

27. Defendant breached that agreement when it failed to comply with its terms including, but not limited to, failure to account for and pay royalties, release of sales information, release of customer information, and failure to refer customers back to Polar upon termination of the Agreement.

28. Defendant's breaches have caused Polar damages in an amount to be more specifically proven at trial.

### Count II: Breach of the Covenant of Good Faith and Fair Dealing

29. Plaintiff hereby incorporates Paragraphs 1-28 and further alleges as follows:

30. The contract between the parties had an implied covenant of good faith and fair dealing.

31. Defendant breached the covenant of good faith and fair dealing by requiring Plaintiff to expend significant resources to meet expected demand representations, then failing to fulfill those expected demands.

32. Defendant failed to provide Plaintiff timely disclosure of client and sales information upon termination of the exclusivity agreement, thereby preventing Plaintiff from re-establishing its sales of product in the market.

33. Defendant failed to refer customers back to Plaintiff resulting in unfulfilled orders and reputation damages.

34. Defendant's failure to provide accountings of sales and royalties prevented Plaintiff from appreciating the low volume of purchases and sales actually resulting from Defendant's exclusive distribution of the products.

35. Defendant's actions with respect to this Agreement were done in bad faith and with intent to harm Plaintiff's business.

### Count III: Misrepresentation

36. Plaintiff hereby incorporates Paragraphs 1-35 and further alleges as follows:

37. Defendant negligently misrepresented its intent to maintain an exclusive purchase and sales contract with Plaintiff for the duration of the contract term.

38. Defendant negligently misrepresented its intent to meet the agreed-upon purchase threshold to maintain exclusivity.

39. Defendant negligently misrepresented its intent to enter into third-party agreements for the sale and distribution of Plaintiff's products.

40. Plaintiff reasonably relied on Defendant's misrepresentations.

41. Plaintiff's reliance upon Defendant's misrepresentations is a direct and proximate cause of Plaintiff's damages.

### Prayer for Relief

WHEREFORE Plaintiff hereby demands a jury trial on each and every triable cause in this action and prays for relief in an amount of approximately $2,500,000 to be proven more specifically at the trial in this cause, its attorney's fees, costs, interest, and any other such relief as is deemed just and equitable in the premises.

Dated this 29th day of April, 2020.

        Amy K. Welch
        The Law Offices of William R. Satterberg, Jr.
        Attorney for Plaintiff
        By: /s/ Amy K. Welch
        Amy K. Welch, Alaska Bar No. 1409064

# EXCLUSIVE SALES AND LICENSE AGREEMENT

THIS EXCLUSIVE SALES AND LICENSE AGREEMENT (this Agreement) entered into effective this 1st day of February, 2016, by and between Polar Environmental Technologies, Inc., whose address is 1200 Queensway, Fairbanks, AK 99701, (hereinafter referred to as Polar ) and Rust-Oleum Corporation, whose address is 11 E. Hawthorn Pkwy., Vernon Hills, IL 60061 (hereinafter referred to as (Rust-Oleum).

**RECITALS:**

WHEREAS, Polar is engaged in the manufacture and sale of certain flexible treading Products for (though not limited to) horizontal surfaces such as stairs and floors and sold under the names, including but not limited to, Extreme Grip and Lava Grip, some of which Products are protected under U.S. Patent No. 5,836,091 (hereinafter the "Products");

WHEREAS, Rust-Oleum desires to purchase the Products on an exclusive basis directly from Polar for resale in the "Market" as defined in this Agreement and further desires to sell the Products under the RUST-OLEUM trademark;

WHEREAS, both Rust-Oleum and Polar desire to explore the value of the Products in the Market and establish a value for Polar as a going concern, for consideration, but without obligation, of acquisition or other such further business relationship between Polar and Rust-Oleum.

THEREFORE, for and in consideration of the mutual promises and covenants set forth in this Agreement, and for other good and valuable consideration, receipt of which is hereby acknowledged by the parties, the parties hereto agree as follows:

**AGREEMENT:**

1. **Grant of Exclusive Right to Purchase.** Polar hereby agrees that during the term of this Agreement, except as specifically provided herein, it will not sell or otherwise distribute the Products to any other persons or entities, other than Rust-Oleum, for sale in the consumer retail and industrial distribution channels and entertainment industry direct e.g. venue projects such as, stadiums, arenas, and amusement parks (the "Market"). The Market excludes the state of Alaska. Polar shall retain the sole right to sell the Products and all other Polar Products in Alaska and to other purchasers and third parties in the Sports market during the term of this Agreement, provided that such purchasers are not actually known by Polar to be engaged in sales in the Market. The sport market ("Sports") is defined as consumer retail and industrial distribution channels for OEM and aftermarket sports equipment. In granting Rust-Oleum the exclusivity described in this Agreement, Polar represents only that it will not knowingly make any sales of the Products to customers other than Rust-Oleum for resale in the Market. Polar does not and cannot make any representations or warranties concerning the end use of the Products. Polar will use commercially reasonable efforts to track the end uses of the Products by its customers and will discontinue immediately any sales of the Products to any customer if Polar learns, or has reason to believe, that such customer is or has the intention of using the Products in the Market.

2. **Consideration for Grant of Exclusive Right.** As consideration for the grant of the limited exclusive right to purchase described in Section 1, above, Rust-Oleum agrees to

purchase from Polar not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) of Products each year during the term of this agreement. If during any year under this Agreement Rust-Oleum fails to purchase at least $500,000 of Products, Polar may convert this Agreement to a non-exclusive agreement for sales to the Market. In order to maintain the exclusive right to purchase the Products for sale into the Market, Rust-Oleum shall have the option of supplementing its payments to Polar for Products purchases so as to equal $500,000 for that year.

3. **Orders.** Polar will use its best efforts to fill any orders for Products placed by Rust-Oleum as quickly as possible. Notwithstanding anything herein to the contrary, if Polar is not able to fill an order within such time period, it will notify Rust-Oleum as soon as reasonably possible with the estimated date of delivery. Polar shall not be responsible for any delays in delivery due to circumstances outside of Polar ' control, including but not limited to labor shortages, material shortages, and other unforeseen conditions or delays. If at any time during the term of this agreement Polar is unable or unwilling to fulfill Rust-Oleum's Products requirements, Polar will engage a third party manufacturer, with the approval of Rust-Oleum, to manufacture and supply to Rust-Oleum its Products requirements at its then current prices.

4. **Price.** The parties agree that the purchase prices will be based on the current price list attached hereto as Exhibit 1. Polar reserves the right, from time to time, to increase or decrease the price for the Products to reflect changes in material and manufacturing costs; provided, however, that Polar shall attempt to provide at least 90 days' notice of any such change in pricing and will provide to Rust-Oleum documentation to support its price adjustments.

5. **Payment Terms; Shipping.** During the first three months of this agreement, Rust-Oleum will prepay on all of its orders. Thereafter, payment terms will be net 45 days from invoice. Shipping and delivery charges shall be as set forth on Polar's standard invoice, namely, FOB Polar's plant. Rust-Oleum agrees to separately pay all expenses incurred by Rust-Oleum in the shipment and delivery of the Products, including, without limitation, freight charges, import duties and insurance premiums. Title to and risk of loss for the Products ordered by Rust-Oleum shall pass to Rust-Oleum upon delivery of the Products to the carrier at the FOB point. Polar will not have any responsibility for any damage that may occur to the Products during shipment and Rust-Oleum must handle any and all such claims with the carrier.

6. **Representations and Warranties of Polar.** Polar represents and warrants to Rust-Oleum as follows:

   (a) Polar warrants that it owns the Products technology and has the right to sell the Products to Rust-Oleum under the terms of this Agreement.

   (b) Polar warrants that the Products supplied to Rust-Oleum will meet the Products quality standards agreed upon by Rust-Oleum and Polar .

   (c) Polar will meet the Products purchase requirements of Rust-Oleum.

7. **Intellectual Property.** Polar retains any and all rights, title and interest in and to all intellectual property rights or any other proprietary rights, including without limitation all copyrights, trademarks, patents, and trade secrets, embodied in or associated with the Products. Rust-Oleum shall not use any of Polar's trademarks without the prior written consent of Polar.

**8. License Royalties.** Rust-Oleum will pay Polar royalties of 3% on its net sales of the Products. "Net Sales" shall be Rust-Oleum's gross sales price of the Products, minus any transportation costs and returns. Royalties shall be paid quarterly within 30 days after the end of each calendar month during the term of this Agreement.

**9. Term; Termination.** The term of this Agreement shall be from January 1, 2016 through midnight on December 31, 2020, unless it is sooner terminated according to the provisions hereof. Notwithstanding the foregoing, either party may terminate this Agreement upon written notice to the other party in the event that Rust-Oleum fails to make the minimum annual purchases of the Products as described in Section 2 of this Agreement. Polar may also terminate this agreement in the event: (i) Rust-Oleum's account with Polar becomes delinquent and is not paid, in full, within thirty (30) days after receipt of written notice of such delinquency; (ii) Rust-Oleum ceases to function as a going concern; (iii) a receiver is appointed for Rust-Oleum, or an assignment is made for the benefit of Rust-Oleum's creditors, or if a bankruptcy petition, whether voluntary or involuntary, is filed by or against Rust-Oleum. Any termination of this Agreement shall not release Rust-Oleum from any debt or other liability which Rust-Oleum may then have with Polar. Polar reserve the right, upon termination of the agreement, to procure from Rust-Oleum information on all sales of Products during the twelve (12) months prior to termination, including but not limited to customer contact information, sales pricing, and sales volume. Rust-Oleum agrees to contact and refer all customers having purchased Product within the twelve (12) months leading up to the termination of the agreement, to Polar's office for future sales.

**10. Disclaimer of Warranties; Limitation of Liabilities.**

**10.1 Disclaimer of Warranties.** Polar makes no warranty or representation with respect to the Products, except that the Products will continue to have the same quality and performance of the Products accepted by Rust-Oleum prior to the commencement of this agreement. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, POLAR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, EXCEPT THOSE, IF ANY, MADE UNDER ITS STANDARD WARRANTY. THE PRODUCTS ARE PROVIDED BY POLAR TO RUST-OLEUM "AS IS", WITHOUT ANY WARRANTY OF ANY KIND AND ON AN "AS AVAILABLE" BASIS.

**10.2 Limitation of Liabilities.** Polar will not be liable for nor shall Rust-Oleum make a claim for, whether based in contract, tort, strict or statutory liability, negligence, indemnification or otherwise, any special, incidental, exemplary, punitive, indirect or consequential damages, including but not limited to lost revenue, profits or savings and loss of business, goodwill or clients, arising in any manner from Polar ' performance or nonperformance of its obligations under this Agreement. Polar's maximum liability for any and all permissible damages, losses, costs and causes of action shall be the actual amount received by Polar from any sales of the Products to customers other than Rust-Oleum for use in the Market.

**11. Indemnification; Insurance.**

**11.1 Rust-Oleum's Indemnity Obligations.** Rust-Oleum has independently evaluated the Products and has determined that they are suitable for Rust-Oleum's sales to the Market, and shall defend and hold Polar free and harmless from and against any and all claims,

including but not limited to claims for false advertising, personal property damage and personal injury, made against Polar based upon, arising out of, or in any way related to the use of the Products by Rust-Oleum, including but not limited to any claims for fees (including but not limited to attorneys' fees), costs and expenses incurred by Polar in the investigation of or defense against any and all of the foregoing claims.

    **11.2** **Liability and Products Liability Insurance.** During the term of this Agreement, and for a period of at least three (3) years after the expiration or sooner termination of this Agreement for any reason, Rust-Oleum shall at all times maintain in full force and effect general liability insurance, which insurance shall also include Products liability coverage, in amounts and of a type customarily maintained by companies similarly situated to Rust-Oleum and engaged in similar business activities, provided that such insurance shall provide not less than $2,000,000 in coverage per occurrence. Such insurance shall name Polar as an additional insured and shall protect Rust-Oleum against any claims by Polar on account of the indemnity obligations assumed by Rust-Oleum under this Agreement. Rust-Oleum shall provide evidence of such insurance periodically upon the request of Polar.

    **12.** **Confidentiality.** During the term of this Agreement, the parties will develop and use information such as sales volume, pricing, customer lists, market analyses and manufacturing techniques which will be handled as confidential trade secrets by the parties. Neither party will disclose to any third party confidential information developed by the parties during the term of this Agreement without the written permission of the other party.

    **13.** **Relationship of Parties.** This Agreement and Rust-Oleum's rights and obligations hereunder may not be transferred or assigned, in whole or in part, either voluntarily or by operation of law, without the prior written consent of Polar, and any such attempted transfer or assignment shall be null and void and shall have the effect of immediately terminating this Agreement. Rust-Oleum may however transfer or assign its rights and obligations hereunder to any successors to its business. Nothing in this Agreement shall be construed to create an agency relationship between Rust-Oleum and Polar. Accordingly, neither party shall be liable for any debts, accounts, obligations or other liabilities or torts of the other party to this Agreement, or their agents or employees, except as may be expressly provided in this Agreement.

    **14.** **Amendments.** No part of this Agreement may be amended, altered or otherwise modified unless done so in a writing duly executed by the parties hereto.

    **15.** **Notices.** All notices, requests, demands and other communications which are required to be or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person or transmitted by facsimile machine or e-mail or on receipt after dispatch by certified or registered first-class mail, postage prepaid, return receipt requested, to the party to whom the same is to be given or made at the address set forth at the top of this Agreement, or to such other address as any party may designate by giving notice to the other parties hereto.

    **16.** **Additional Documents.** Each of the parties hereto shall, from time to time as may be required to further effectuate the intent of this Agreement and at the request of any other party hereto, execute and deliver such other instruments and take such other actions as may be required to confer to such other party the benefits contemplated by this Agreement and no party will unreasonably withhold or delay such further assurances.

17. **Force Majeure.** Polar shall not be liable in any respect for failure to ship or for delay in shipment of the Products pursuant to accepted orders where such failure or delay shall have been due wholly or in part to the elements, acts of God, acts of Rust-Oleum, acts of civil or military authority, fires, floods, epidemics, quarantine, restrictions, war, armed hostilities, riots, strikes, lockouts, breakdown, differences with workers, accidents to machinery, delays in transportation, delays in delivery by Polar's suppliers or any other cause beyond the reasonable control of Polar. Upon such occurrence, Polar shall immediately notify Rust-Oleum as soon as reasonably practicable of such inability and of the period for which such inability is expected to continue, and any time for performance hereunder shall be extended by the actual time of delay caused by the occurrence; provided, that Polar uses commercially reasonable efforts to mitigate any damages incurred by Rust-Oleum.

18. **Entire Agreement.** This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, whether oral or written, between the parties hereto with respect to the subject matter hereof.

19. **Third Parties.** Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies on any person other than the parties to this Agreement, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third party, nor shall any provision give any third party any right of subrogation or action against any party to this Agreement.

20. **Governing Law; Venue.** This Agreement has been entered into in the State of Alaska, and shall be construed and interpreted in accordance with, and the rights and obligations of the parties shall be determined by, the laws of the State of Alaska. If any suit or action is filed by any party to enforce this Agreement or otherwise with respect to the subject matter of this Agreement, venue shall be in the federal or state courts in Alaska.

21. **Separability.** If any provision of this agreement, or any application thereof to any person, partnership, or corporation, or circumstance, is held invalid, the remainder of this agreement, and the application of such provisions to any other person, partnership, corporation, or circumstance, shall not be affected thereby.

WHEREFORE, the parties have caused this Agreement to be executed as of the date first set forth above.

| POLAR ENVIRONMENTAL INDUSTRIES INC. | RUST-OLEUM CORPORATION |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: Deanna Miles | Name: Kelly Bye |
| Title: President/CEO | Title: SVP Sales & Marketing IBG |